IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MANSHA CONSULTING LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civ. No. 16-00582 ACK-RLP |
| vs. | ) |
| | ) |
| CLIFF ALAKAI, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING DEFENDANT TOM MATSUDA, INDIVIDUALLY, AND AS A
DIRECTOR AND/OR OFFICER OF HAWAII HEALTH CONNECTOR'S MOTION TO
DISMISS COMPLAINT FILED OCTOBER 28, 2016 AND GRANTING DEFENDANTS
CLIFF ALAKAI AND JEFFREY KISSEL'S PRE-ANSWER MOTION TO DISMISS
FILED ON OCTOBER 28, 2016**

For the reasons discussed below, the Court GRANTS
Defendant Tom Matsuda, Individually, and as a Director and/or
Officer of Hawaii Health Connector's Motion to Dismiss Complaint
Filed October 28, 2016, ECF No. 12, to which Defendants Cliff
Alakai and Jeffrey Kissel filed a joinder, ECF No. 21, and
GRANTS Defendants Cliff Alakai and Jeffrey Kissel's Pre-Answer
Motion to Dismiss Complaint Filed on October 28, 2016, ECF No.
20.

**FACTUAL BACKGROUND**

In 2010, the Affordable Care Act ("ACA") required
states to establish health exchanges to facilitate, for
individuals and entities, the selection, purchase, and
enrollment in private health insurance plans.  Compl. ¶ 13, ECF

No. 1.  As a result, the State of Hawaii established the Hawaii Health Connector ("HHC" or the "Connector"), the State's health insurance exchange.  Id.  ¶ 14.  To assist with its obligations, and in particular, to implement necessary information technology programs and systems, HHC retained Plaintiff Mansha Consulting, LLC ("Mansha" or "Plaintiff").  Id. ¶¶ 12, 16, 17.

Mansha entered into a contract with HHC (the "IPMO Contract") which totaled over 21 million dollars.  Id. ¶ 17. The IPMO Contract was funded through grants from the federal government, and accordingly, payment to Mansha was to be supplied by the Centers for Medicare and Medicaid Services ("CMS"), the responsible federal agency.  Id. ¶ 18.  Mansha began work under the IPMO contract on or around April 2013.  Id. ¶ 19.  On September 1, 2014 and thereafter, HHC failed to forward Mansha's invoices for payment.  Id. ¶ 20.  Following several months of unpaid invoices, each of which was in the amount of $677,842.61 plus excise taxes, Mansha on or around December of 2014, was unable to continue to perform under the IPMO Contract because of financial constraints.  Id. ¶ 21.  From July 2014 to December 2014, Mansha continued its work under the contract based on assurances by the Defendants, who were directors and/or officers of HHC, that payment would be made to Mansha based on its invoices.  Id. ¶¶ 12, 21.

Eventually, HHC collapsed.  Id. ¶ 22.  Since HHC's collapse, Mansha has attempted to recover its losses by demanding compensation from HHC, contacting CMS directly, and communicating with other relevant third parties.  Id.

In relation to Defendants actions in mishandling the invoice payments, Mansha alleges that Defendants were negligent and breached their fiduciary duties.  Id. ¶ 23.  As a result, Mansha claims, inter alia, that its value as a company has been diminished, a pending acquisition of Mansha was derailed, and that it has lost millions of dollars.  Id.

With respect to the specific Defendants at issue in the instant Motions to Dismiss, the Complaint contains the following allegations.

Defendant Cliff Alakai ("Alakai") was the Chairman of the Board of Directors for HHC during the relevant time period and at some point served as Treasurer for the Board of Directors.  Id. ¶ 26(a).  Alakai's duties in this role included ensuring proper operation of HHC.  Id. ¶ 26(c).  Mansha informed Alakai that the invoices were not being forwarded to CMS.  Id. ¶ 26(b).  Alakai failed to properly manage and oversee HHC with respect to the handling of invoices and the issues raised by Mansha, and took no actions to correct the issues.  Id. ¶¶ 26(d), (e).

Defendant Tom Matsuda ("Matsuda") was the Interim Executive Director of HHC "from a date unknown" until approximately October of 2014.  Id. ¶ 27(a).  Matsuda's duties in this role included responsibility over the overall administration of HHC including financial, personnel, and operational requirements.  Id. ¶ 27(b).  Matsuda failed to investigate and resolve the ongoing issues faced by Mansha and misinformed Mansha about the reasons for delay of payment.  Id. ¶ 27(d).

In particular, Matsuda negligently misinformed Mansha that the invoices were not being forwarded to CMS because there was a restriction on funds initiated by either CMS or HHC.  Id. ¶¶ 27(d), (e).  Mansha later learned that although such a restriction may have existed for a short period of time, the restrictions had been cleared and its invoices could have been paid.  Id. ¶ 27(d).  As a result of this misinformation, Mansha was unable to take action which would have resulted in proper payment.  Id.  Matsuda also made erroneous assurances to Mansha that it would be paid on its submitted invoices.  Id. ¶ 27(f).

Defendant Jeffrey Kissel ("Kissel") was HHC's Executive Director starting in October of 2014.  Id. ¶ 28(a).  Kissel failed to properly ensure investigation and resolution of ongoing issues faced by Mansha.  Id. ¶ 28(c).  Kissel made similar statements as Matsuda regarding the reasons for delay,

including misinforming Mansha about the restrictions on funds. Id. ¶¶ 28(d), (e).  In addition, Kissel erroneously reassured Mansha that it would be paid according to its submitted invoices.[1]  Id. ¶ 28(e).

## PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Defendants on October 28, 2016.  The Complaint raises claims for negligence and breach of fiduciary duty against all Defendants.

On December 5, 2016, Matsuda filed a Motion to Dismiss Complaint Filed October 28, 2016.  ECF No. 12.  Mansha filed its Opposition on December 30, 2016.  ECF No. 19.  Alakai and Kissel filed a Non-Substantive Joinder to Matsuda's Motion to Dismiss on December 30, 2016.  ECF No. 21.  Matsuda filed a Reply on January 20, 2017.  ECF No. 26.

On December 30, 2016, Alakai and Kissel filed a Pre-Answer Motion to Dismiss Complaint Filed on October 28, 2016. ECF No. 20.  Plaintiff filed its Opposition on January 13, 2017. ECF No. 25.  Alakai and Kissel filed a Reply on January 20,

---

[1] The Complaint also raises claims against Eric Alborg, HHC's Deputy Executive Director, and Diane Reich, HHC's Chief Financial Officer.  Compl. ¶¶ 29(a), 30(a).  On January 24, 2017, Mansha filed a Motion for Extension of Time to Serve these Defendants noting that Mansha had diligently attempted personal service.  ECF No. 30.  The Magistrate Judge granted Mansha's request on January 30, 2017, extending the time for service until April 26, 2017.  ECF No. 31.

2017.  ECF Nos. 27-28.  On January 20, 2017 Matsuda filed a Non-Substantive Joinder to Defendants Alakai and Kissel's Reply. ECF No. 29.

The Court held a hearing on both Motions to Dismiss on February 2, 2017.

## STANDARD

### I.   Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

6

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## II.   Statute of Limitations

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (quoting Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010)).  Moreover, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995).

<u>**DISCUSSION**</u>

**I.    Count I: Negligence**

   **A. Statute of Limitations as to Defendant Matsuda**

        Matsuda maintains that Plaintiff's negligence claim against him is time-barred by Hawaii's statute of limitations. Matsuda's Mem. in Support of Motion to Dismiss ("Matsuda Mem."), at 7, ECF No. 12-1.  The Court disagrees.

        In diversity cases, "federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations."  <u>Aana v. Pioneer Hi-Bred Int'l, Inc.</u>, 965 F. Supp. 2d 1157, 1178-79 (D. Haw. 2013) (quoting <u>Heiser v. Ass'n of Apartment Owners of Polo Beach Club</u>, 848 F. Supp. 1482, 1484 (D. Hawaii 1993)).  In Hawaii, negligence claims are subject to a two-year statute of limitations pursuant to Hawaii Revised Statutes ("HRS") § 657-7.  <u>Id.</u>

        Specifically, HRS § 657-7 provides that causes of action for personal injury "shall be instituted within two years after the cause of action accrued."  Under Hawaii law, a claim "does not 'accrue' and the statute of limitations in § 657-7 does not begin to run, until the plaintiff knew or should have known of the defendant's negligence."  <u>Aana</u>, 965 F. Supp. 2d at 1179 (citing <u>Hays v. City & County of Honolulu</u>, 917 P.2d 718, 720 (Haw. 1996)).  Accordingly, the "claim accrues 'the moment plaintiff discovers or should have discovered the negligent act,

the damage, and the causal connection between the former and the latter.'" Id. (quoting Yamaguchi v. Queen's Med. Ctr., 648 P.2d 689, 693–94 (Haw. 1982)).

Matsuda claims that the statute of limitations as to him expired because the claim accrued on his last day as Interim Executive Director of HHC. Matsuda Mem., at 8. The Complaint provides that Matsuda was the Interim Executive Director until "approximately October, 2014," Compl. ¶ 27(a), and Matsuda argues that "Plaintiff's negligence claim against Matsuda is expressly based on conduct that had to have occurred on or before Matsuda's last day as Interim Director," Matsuda Mem., at 8. Because the Complaint was filed on October 28, 2016, to be timely, Plaintiff's negligence claim must have accrued on October 28, 2014 or later. Matsuda attached a Declaration to his Motion to Dismiss, claiming that he served as Interim Executive Director until October 24, 2014. Matsuda Decl. ¶ 4. On this basis, Matsuda argues that the negligence claim is time-barred.

In the first instance, the Court agrees with Mansha that it is inappropriate to consider Matsuda's Declaration at the Motion to Dismiss stage. See Memorandum in Support of Plaintiff's Opposition to Defendant Tom Matusda's Motion to Dismiss ("Opp. to Matsuda Motion"), at 6 n.2, ECF No. 19-1. The Declaration is not subject to judicial notice nor has Matsuda

offered any justification for why it may be considered under Rule 12(b)(6).  Thus, even if the Court were to accept Matsuda's argument that the negligence claim accrued on the last day he served as Interim Executive Director, Matsuda's argument fails. It is not apparent on the face of the Complaint that the statute of limitations has run.  See, e.g., Air Control Techs., 720 F.3d at 1178.  The Complaint merely states that Matsuda served as the Interim Executive Director until "approximately" October 2014. Pursuant to Matsuda's argument, if Matsuda had served as Interim Executive Director until October 28, 2014 or later, Mansha's Complaint would be timely.

Moreover, as Mansha points out, and as noted above, the negligence claim accrues at "the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter."  Aana, 965 F. Supp. 2d at 1179 (citation omitted).  Thus, Matsuda's last day as Interim Executive Director does not represent the day the cause of action accrued if Mansha did not become aware of the damage from Matsuda's alleged negligence and the causal connection between the damage and Matsuda's negligence until after Matsuda's time in that position.  The Complaint alleges that Matsuda informed Mansha that the reason the invoices were not being forwarded to CMS was that a restriction on funds had been initiated.  Compl. ¶ 27(e).  However, according to the

Complaint, Mansha "later learned that while this may have been true for a short time, any such restrictions had been cleared and MANSHA's invoices could have been paid." Id. This provides an example of an allegedly negligent act that according to the Complaint, Mansha may not have become fully aware of until after Matsuda's role as Interim Executive Director ended.

Under these circumstances, it cannot be said that the running of the statute of limitations is apparent from the face of the Complaint. Accordingly, the Court denies Matsuda's Motion to Dismiss on this basis.[2]

### B. Whether the Complaint Sufficiently Alleges a Claim for Negligence Against Defendants Matsuda, Alakai, and Kissel

Both Motions to Dismiss argue that Mansha's negligence claim against Defendants must be dismissed because Mansha has failed to allege that Defendants' conduct violated a duty owed to Mansha independent of the contract between HHC and Mansha. The Court agrees.

---

[2] Mansha attaches to its Opposition to Matsuda's Motion to Dismiss a Declaration from a principal of Mansha providing that he delivered an invoice dated October 1, 2014 to HHC, for which the due date was October 31, 2014. Raheja Decl. ¶ 3. The Declaration states that the first day the invoice would have been late was November 1, 2014. Id. ¶ 4. On this basis, Mansha argues that the earliest date the negligence claim could have accrued would have been November 1, 2014, making the claim timely. Opp. to Matsuda Motion, at 7. As with the evidence submitted by Matsuda, the Court finds it inappropriate to consider the Declaration submitted by Mansha in a Motion to Dismiss.

The parties agree that Francis v. Lee Enterprises, Inc., 971 P.2d 707 (Haw. 2002), applies to this case.  In Francis, the Hawaii Supreme Court was asked to decide whether Hawaii "recogniz[ed] a tortious breach of contract cause of action in the employment context."  Id. at 708.  The court determined that although Hawaii law previously allowed for tortious breach of contract claims, continuing to allow such claims would "blur[] the distinction between . . . tort and contract law."  Id.  The court held that Hawaii law would prohibit "tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract."  Id.

The proposition that tort recovery is not available where the duties alleged are not independent or separate from contractual obligations has been recognized by other courts in the Ninth Circuit.  In Bernstein v. GTE Directories Corp., for example, plaintiffs were attorneys who contracted with the defendant to place their contact information along with an advertisement in a local telephone directory.  827 F.2d 480, 481 (9th Cir. 1987).  The defendant failed to place the attorneys' information in the directory and the attorney plaintiffs sued for breach of contract and negligence.  Id.

On appeal, the plaintiffs argued that the district court incorrectly granted summary judgment on their negligence

claim, because the defendant negligently published the directories and "breach[ed] its obligation to perform its services in a skillful, careful, and diligent manner."  Id. at 482.  Applying Nevada law, the court rejected the plaintiffs' argument, finding that "the actions or omissions complained of" did not "constitute a violation of duties imposed by law" and instead involved "duties arising by virtue of the alleged express agreement between the parties."  Id. (quoting Bernard v. Rockhill Development Co., 734 P.2d 1238, 1240 (Nev. 1987) (per curiam)).  The court further held that the plaintiffs "failed to establish any cognizable duty under Nevada law apart from and independent of [the defendant's] contractual promises."  Id. Accordingly, the defendant's "nonperformance" was "actionable only as a breach of contract."  Id.

        The Ninth Circuit reached a similar result in Kelomar, Inc. v. Kulow, applying California law.  413 Fed. Appx. 981 (9th Cir. 2011).  In Kelomar, the plaintiff, a melon grower, claimed that the owner of a company that sold grower packing materials owed a personal duty to ensure that the plaintiff's melons were properly labeled.  Id. at 982.  The court determined that there was "no general duty to label melons correctly independent of a contract" and that if the defendant had any such duty "it could only arise from [the company's] contract with [the plaintiff]." Id.  The court held that even if the contract at issue imposed a

13

personal duty on the owner, the plaintiff "could not recover in tort for the breach of that contractual duty." Id.  On this basis, the court agreed with the district court that the plaintiff "should seek its remedy in a breach-of-contract suit against [the company]." Id. at 983.

The Court agrees with Defendants that here, Plaintiff has failed to allege a duty owed by the Defendants to Mansha that is "independently recognized by principles of tort law." Francis, 971 P.2d at 708; see also White v. Sabatino, 415 F. Supp. 2d 1163, 1173 (D. Haw. 2006) (noting that one of the elements of a negligence claim is the assertion of "[a] duty or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.").  As discussed further below, the allegations in the Complaint involve duties owed by Defendants to HHC or duties that—if the Defendants had at all—arose from the contract between HHC and Mansha, as in Bernstein and Kelomar.  Accordingly, Mansha's allegations are insufficient to raise a claim for negligence.

First, the Complaint asserts that Defendants owed certain duties given their roles as directors and officers of HHC.  For instance, the Complaint states that Alakai, as Chairman of the Board of the Connector, "had a duty to ensure proper operation of the Connector, to oversee and ensure

14

appropriate and compliant conduct by Connector employees and

officers and . . . to investigate and resolve the issues raised

by MANSHA regarding the unpaid invoices." Compl. ¶ 26(c). With

respect to Matsuda and Kissel, the Complaint notes that the

duties of the Executive Director of HHC included "responsibility

for the overall administration of the Connector, including all

policy, financial, personnel, and operational requirements of

the Connector." Compl. ¶¶ 27(b), 28(b).

       As Defendants Alakai and Kissel note, however, these

duties were duties owed by Defendants to HHC through their

employment contract with HHC; they are not owed to third party

contractors, like Mansha. Accordingly, the above-mentioned

allegations fail to assert a legally recognized duty as needed

to put forth a valid negligence claim against Defendants. <u>See</u>

Restatement (Third) Of Agency § 7.02 (2006) ("An agent's breach

of a duty owed to the principal is not an independent basis for

the agent's tort liability to a third party. An agent is

subject to tort liability to a third party harmed by the agent's

conduct only when the agent's conduct breaches a duty that the

agent owes to the third party.).

       With respect to allegations in the Complaint regarding

a specific duty owed by Defendants to Mansha, the Complaint

merely states that Defendants "owed MANSHA a duty to take

reasonable care in the carrying out of [their] responsibilities

to protect MANSHA against foreseeable risks."  Compl. ¶¶ 26(f), 27(g), 28(g).  The Court agrees with Defendants that this allegation is conclusory and insufficient to withstand a motion to dismiss.  See Ashcroft, 556 U.S. at 678 (noting that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Moreover, the negligent conduct alleged invokes duties that would only arise from the contract between HHC and Mansha. Mansha essentially claims that Defendants failed to investigate and resolve the issues involving Mansha's unpaid invoices and failed to issue stop work orders for Mansha; and that Defendants Matsuda and Kissel negligently misinformed Mansha about the reasons for delay and the status of the payments, leading to additional damages.  See Compl. ¶¶ 26-28.  These allegations involve HHC's alleged failure to perform on the contract, i.e., its failure to pay Mansha for its work.  They do not involve violations of any duty independently recognized by Hawaii tort law.  See Francis, 971 P.2d at 708.  As in Bernstein, Mansha has "failed to establish any cognizable duty under [Hawaii] law apart from and independent of [HHC's] contractual promises." 827 F.2d at 482; see also Kelomar 413 Fed. Appx. at 982-83 ("A

person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." (quoting Aas v. Superior Court, 12 P.3d 1125, 1135 (Cal. 2000)).

Mansha attempts to argue that its allegations that Defendants Matsuda and Alakai made affirmative representations that Mansha would be paid involved a duty independent from the contract between Mansha and HHC.  However, this claim attempts to "turn[] a promise to perform into a statement of fact so that failure to perform automatically shows a misrepresentation of intention to perform."  Catamount Radiology, P.C. v. Bailey, No. 1:14-CV-213, 2015 WL 3795028, at *14 (D. Vt. June 18, 2015) (quoting Howard v. Usiak, 775 A.2d 909, 913 (Vt. 2001)).  As noted by the Vermont Supreme Court in Howard v. Usiak, if such a promise to perform were actionable in tort, "any breach of contract would be misrepresentation so that negligent breach would be a tort."  775 A.2d at 913.  The court in Howard recognized "the need to keep tort and contract theories separate so that negligence concepts do not overrun the limitations on contractual rights and remedies."  Id.  The same concerns were outlined by the Hawaii Supreme Court in Francis, and are applicable here.

Mansha also broadly asserts that Defendants owed a general duty to "refrain from negligent conduct" and "behavior." Opp. to Matsuda Motion, at 8-9; Memorandum in Support of

17

Plaintiff's Opposition to Defendant Alakai and Kissel's Motion to Dismiss ("Opp. to Alakai and Kissel Motion"), ECF No. 25, at 6-7. However, as Defendants argue, Mansha's support for this claim is based on cases that are inapposite as they involve the duty to refrain from conduct that imposes a risk of physical injury on others. Here, there is no physical injury alleged.

First, Mansha cites to a California case in which the California Supreme Court noted that a director of a corporation "owe[s] a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury to third parties." Frances T. v. Vill. Green Owners Ass'n, 723 P.2d 573, 581 (Cal. 1986). Frances T. presented a unique set of facts. In Frances T., an owner of a condominium unit brought various claims, including a negligence claim, against the condominium association and individual members of its board of directors after she was robbed and raped in her home. Id. at 574-75. The plaintiff alleged that the defendants' negligence stemmed from their failure to install sufficient exterior lighting in the building and from requiring plaintiff to remove the additional lighting that she had installed. Id. at 576. With respect to the individual directors, the court noted that the plaintiff had alleged facts that the directors "had specific knowledge of a hazardous condition threatening physical injury to the

residents, yet they failed to take any action to avoid the harm;
moreover, the action they did take may have exacerbated the risk
by causing plaintiff's unit to be without any lighting on the
night she was attacked." Id. at 584 (emphasis added).

As noted above, Frances T., unlike the instant case,
involved a duty of care to avoid an unreasonable risk of
physical injury, and is accordingly distinguishable.  Frances T.
also included specific allegations that the directors were aware
of a "hazardous condition" that could cause "physical injury" to
the plaintiff.  A comparable set of allegations is not present
in the instant case.

Ah Mook Sang v. Clark, 308 P.3d 911 (Haw. 2013), cited
to by Mansha for the proposition that general duties of care are
heightened when a director or officer "creates a situation of
increased risk," Opp. to Matsuda Motion, at 7 (emphasis
omitted), also involved the risk of great physical harm.  Ah
Mook Sang raised the following issue:

> [W]hether a social host who invites a minor onto
> his or her property and then directly serves
> alcohol to the minor owes a duty of care to
> prevent foreseeable injuries resulting from
> consumption of the alcohol, or to render or
> summon aid if injuries have occurred, while the
> minor remains on the property as a guest.

Id. at 914.  The minor who was served the alcohol in Ah Mook
Sang died as a result of alcohol intoxication.  Id.

Quoting to the Restatement (Second) of Torts, the court noted that, "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect." Id. at 923 (emphasis added) (quoting Restatement (Second) of Torts § 321(1)).  In finding that the social host defendant owed the minor a duty of care, the court also cited to the proposition "that 'a possessor of land who invites someone onto his/her property holds a special relationship with the person on his/her property for so long as that person is on the property.'"  Id. at 924 (citation omitted).  The court determined based on the relevant authority that the defendant "by providing large amounts of hard liquor to a fifteen-year-old minor . . . knew or should have known that he created an unreasonable risk of physical harm to [the minor] and thus assumed the duty to prevent the harm from occurring."  Id. (emphasis added).  The court further noted that defendant "[h]aving failed to prevent physical harm from occurring, and in fact having caused the harm . . .  had the duty to prevent further harm from occurring."  Id.

Ah Mook Sang is clearly distinguishable.  The court found that the defendant in Ah Mook Sang had a special relationship with the minor as an invitee on his property.  The

court also emphasized that the duty at issue related to preventing _physical_ harm from occurring, and the physical harm at issue in _Ah Mook Sang_ was death.  Here, such factors are not present.

Mansha also cites to _Cahill v. Hawaiian Paradise Park Corp._ in attempt to support its claims.  543 P.2d 1356 (Haw. 1975).  In _Cahill_, the plaintiff sued a corporation that owned and operated a radio station, its president, and its manager for defamation.  _Id._ at 1358.  With respect to the plaintiff's claims against the corporation's president, the court found the president was not liable because he did not "participate[] in the broadcast complained of."  _Id._ at 1360.  The court noted "that officers, directors or shareholders of a corporation are not personally liable for the tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons."  _Id._

_Cahill_, however, is distinguishable from the instant case.  Namely, in _Cahill_, there was no contract between the defendant corporation and the plaintiff.  The allegations thus included assertions of a duty independently recognized by tort law.  Here, the relationship between the parties arises from the contractual relationship between HHC and Mansha; and as noted

21

above, Mansha has failed to sufficiently allege a duty owed by the Defendants to Mansha.

The Court notes "[t]he general rule [] that a person does not have a duty to act affirmatively to protect another person from harm." Lee v. Corregedore, 925 P.2d 324, 329 (Haw. 1996). Moreover, "[t]he fact that the actor realizes or should realize that action on his [or her] part is necessary for another's aid or protection does not of itself impose upon him [or her] a duty to take such action." Id. (alteration in original) (quoting Restatement (Second) of Torts § 314 (1965)). Importantly, the Hawaii Supreme Court has held that it is "reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society." Id. at 336.

Here, Mansha has failed to support its claim that the directors and officers of HHC owed duties to Mansha, a third party contracting with HHC, to prevent economic injury. Mansha has not cited to Hawaii caselaw—or indeed any other authority—recognizing that a duty would exist under similar circumstances. In sum, Mansha's Complaint fails to plead sufficient allegations to show a duty independently recognized by the principles of tort law owed by Defendants to Mansha. Accordingly, the Court

grants the Motions to Dismiss with respect to Count I of the

Complaint WITHOUT PREJUDICE and WITH LEAVE TO AMEND.[3]

## II.    Count II: Breach of Fiduciary Duty

         Defendants additionally argue that Mansha's breach of

fiduciary duty claim should be dismissed because Defendants owed

no fiduciary duty to Mansha.  In turn, Mansha maintains that the

fiduciary duties owed to Mansha by Defendants stemmed from HHC's

insolvency, pursuant to the trust fund doctrine.  The Court

finds that Mansha's fiduciary duty claim against Defendants

should be dismissed.

         Mansha claims that the trust fund doctrine, followed

in Hawaii, serves as a basis for fiduciary duties to attach to

Defendants in the instant case.  The trust fund doctrine is

recognized in some jurisdictions as imposing certain fiduciary

duties on a corporation's directors when the corporation becomes

insolvent.  The basic concept of the doctrine is "that all of

the assets of a corporation, immediately on its becoming

insolvent, exist for the benefit of all of its creditors and

---

[3] In their Reply, Defendants Alakai and Kissel assert that
Mansha's claims are barred pursuant to the economic loss
doctrine.  Alakai and Kissel Reply, at 6.  The Court notes that
it is inappropriate to consider arguments raised for the first
time in Reply.  <u>See</u> Local Rule 7.4 ("Any argument raised for the
first time in the reply shall be disregarded.").  Moreover,
given that the Court is dismissing the Complaint without
prejudice for the reasons discussed above, it need not consider
at this time this additional argument.

that thereafter no liens or rights can be created either
voluntarily or by operation of law whereby one creditor is given
an advantage over others."  15A William Meade Fletcher, <u>Fletcher
Cyclopedia of the Law of Private Corporations</u> § 7369 (rev. vol.
2009).

Very few cases in Hawaii have involved the trust fund
doctrine and most of these cases are over a hundred years old.
<u>See, e.g.</u>, <u>Hemenway v. Honolulu Clay Co.</u>, 18 Haw. 187, 189 (Haw.
Terr. 1907); <u>Troy Laundry Mach. Co. v. Sanitary Steam Laundry
Co.</u>, 18 Haw. 388 (Haw. Terr. 1907); <u>California Feed Co. v. Club
Stables Co.</u>, 10 Haw. 209, 212 (Haw. Rep. 1896).  Moreover, the
<u>Fletcher Cyclopedia of the Law of Private Corporations</u>
acknowledges that "[p]erhaps no concept has created as much
confusion in the field of corporate law as has the 'trust fund
doctrine.'"  <u>Id.</u>  Fletcher further notes that "[t]he doctrine
has been widely criticized . . . ."  <u>Id.</u>

Hawaii courts appear to have found that only directors
and not officers fall under the scope of the trust fund
doctrine.  In <u>California Feed Co.</u>, the Supreme Court of the
Republic of Hawaii recognized the trust fund doctrine, noting
that

> when . . . a corporation is hopelessly insolvent
> and unable to carry out objects for which it is
> created, <u>the directors</u> must be regarded as
> trustees of the property for the benefit of the
> creditors and stockholders, and it is <u>then their</u>

> duty to wind up the affairs of the corporation
> for the benefit of all concerned[.]

10 Haw. at 212 (emphases added).  As noted in California Feed,

it is the duty of the "directors" of the corporation "to wind

up" the corporation's affairs, without reference to any duty

held by the corporation's officers.  See id.

Troy Laundry, a case from the Supreme Court of the

Territory of Hawaii, dealt with the trust fund doctrine with

respect to claims that the corporation "by its directors, and

while it was insolvent, transferred and conveyed all of its

property to defendant" who was one of the corporation's

directors.  18 Haw. at 389.[4]  In In Re Ellis, in describing the

trust fund doctrine, the Supreme Court of Hawaii noted that "the

'trust fund theory' [] authorize[ed] the directors at the time

of dissolution to serve as trustees."  487 P.2d 286, 289 (Haw.

1971) (emphasis added).  The court noted that "[i]n this

---

[4] The director at issue in Troy Laundry was also the
corporation's vice-president, general manager, and principal
stockholder.  18 Haw. at 389.
    Troy Laundry cites to a Seventh Circuit case which
discussed the trust fund doctrine as imposing duties on both
directors and officers.  Id. at 390 (citing Sutton Mfg. Co. v.
Hutchinson, 63 F. 496 (7th Cir. 1894)).  In Sutton, however, the
court described the duty of directors and officers as being
triggered "when a private corporation is dissolved or becomes
insolvent, and determines to discontinue the prosecution of
business."  63 F. at 501 (emphasis added); see also id. at 502
(same).  Here, the Complaint does not allege that HHC
"determin[ed] to discontinue the prosecution of business" at the
time Defendants knew or should have known of HHC's insolvency.
See id.

capacity the former directors are proper and necessary parties to legal proceedings aimed at winding up the affairs of the dissolved corporation." Id. Again, the court referred only to the corporation's directors and not its officers.

Here, the Complaint, in describing the Defendants at issue under Count II, refers only to Alakai as being a director of HHC, i.e., the Chairman of the Board. See Compl. ¶ 37. Matsuda and Kissel are referred to only as officers of HHC, i.e., the Interim Executive Director and Executive Director, respectively. Id. ¶¶ 38-39. Accordingly, Matsuda and Kissel would not be liable under the trust fund doctrine, as they were not directors of HHC.

With respect to Defendant Alakai, the Complaint describes Alakai as a Chairman of the Board under Count II and under Count I also notes that Alakai functioned as the Treasurer for the Board of Directors "during some time." Id. ¶ 26(a). As stated in the Complaint, the establishment of HHC "was codified in Hawaii Revised Statutes, §§ 435H-1—435H-12." Compl. ¶ 14. Pursuant to HRS § 435H-2(a), HHC was established as a "Hawaii nonprofit corporation organized and governed pursuant to chapter 414D, the Hawaii nonprofit corporations act."[5] The Hawaii

---

[5] Chapter 435H of the Hawaii Revised Statutes, which created HHC, was repealed in 2016 after HHC ceased operations. See 2016

(continued . . . )

Nonprofit Corporations Act, in turn, under HRS § 414D-149(f)

provides in pertinent part as follows:

> Any person who serves as a director to the
> corporation without remuneration or expectation
> of remuneration shall not be liable for damage,
> injury, or loss caused by or resulting from the
> person's performance of, or failure to perform
> duties of, the position to which the person was
> elected or appointed, unless the person was
> grossly negligent in the performance of, or
> failure to perform, such duties.

Defendant Alakai asserts in his Motion to Dismiss that all of

the directors of HHC were uncompensated.  See Alakai and Kissel

Mem. in Support of Motion to Dismiss, at 3, ECF No. 20-1.  The

Court notes that Mansha's Complaint does not allege that any of

HHC's directors were remunerated for their services.

The Complaint also does not allege that Defendant

Alakai—or any of the other Defendants—were grossly negligent in

carrying out their duties.  Accordingly, Defendant Alakai is not

liable to Mansha, pursuant to HRS § 414D-149(f).[6]  See DuBois v.

Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1180-

---

( . . . continued)
Haw. Sess. Laws Act 44, § 3.

[6] The Court notes that while Mansha has described the other
Defendants as officers in Count II, in the description of the
parties in ¶¶ 5-9 of the Complaint, each Defendant is referred
to as a "director and/or officer."  Accordingly, because of the
lack of clarity in the pleadings, in the event that Defendants
Matsuda and Kissel were directors of HHC, they likewise would
not be liable to Mansha pursuant to HRS § 414D-149(f).

81 (9th Cir. 2006) (affirming dismissal of a breach of fiduciary claim against a condominium association's directors where gross negligence was not alleged as required by HRS § 414D-149(f)).

Therefore, the Court GRANTS the Motions to Dismiss with respect to Count II of the Complaint WITHOUT PREJUDICE and WITH LEAVE TO AMEND.[7]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Tom Matsuda, Individually, and as a Director and/or Officer of Hawaii Health Connector's Motion to Dismiss Complaint Filed October 28, 2016, ECF No. 12, to which Defendants Alakai and Kissel filed a joinder, ECF No. 21, and GRANTS Defendants Cliff Alakai and Jeffrey Kissel's Pre-Answer Motion to Dismiss Complaint Filed on October 28, 2016, ECF No. 20.

Mansha must file an amended complaint within thirty days of the entry of this Order or else judgment will be entered against it with respect to Defendants Matsuda, Alakai, and Kissel.  Any amended complaint must correct the deficiencies

---

[7] Defendants Alakai and Kissel also claim that Mansha failed to join HHC or its receiver as a party rendering the breach of fiduciary claim procedurally defective.  See Alakai and Kissel Reply, at 16.  Alakai and Kissel cite to Delaware and North Carolina law to support their positions.  Given that the Court is dismissing the breach of fiduciary claim for the reasons discussed above, the Court finds it unnecessary to consider Defendants' arguments at this time.

noted in this Order or Mansha's claims against Defendants

Matsuda, Alakai, and Kissel may be dismissed with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 16, 2017.


_____
Alan C. Kay
Sr. United States District Judge


Mansha Consulting LLC vs. Cliff Alakai, et al., Civ. No. 16-00582 ACK-RLP,
Order GRANTING Defendant Tom Matsuda, Individually, and as a Director and/or
Officer of Hawaii Health Connector's Motion to Dismiss Complaint Filed
October 28, 2016 and GRANTING Defendants Cliff Alakai and Jeffrey Kissel's
Pre-Answer Motion to Dismiss Complaint Filed on October 28, 2016