FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Aug 23, 2017*
SUE BEITIA, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| MANSHA CONSULTING LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   Civ. No. 16-00582 ACK-RLP |
|     vs. | ) |
| | ) |
| CLIFF ALAKAI, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

**ORDER GRANTING DEFENDANT TOM MATSUDA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED MARCH 17, 2017, DEFENDANT CLIFF ALAKAI'S PRE-ANSWER MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED ON MARCH 17, 2017, AND DEFENDANT JEFFREY KISSEL'S SUBSTANTIVE JOINDER TO DEFENDANT MATSUDA'S AND DEFENDANT ALAKAI'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT FILED ON MARCH 17, 2017**

For the reasons set forth below, the Court GRANTS Defendant Tom Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017 (ECF No. 37), Defendant Cliff Alakai's Pre-Answer Motion to Dismiss First Amended Complaint Filed on March 17, 2017 (ECF No. 40), and Defendant Jeffrey Kissel's Substantive Joinder to Defendant Tom Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017 and to Defendant Cliff Alakai's Pre-Answer Motion to Dismiss the First Amended Complaint Filed on March 17, 2017 (ECF No. 41). The Court dismisses all counts in the First Amended Complaint WITH PREJUDICE, and Plaintiff's First Amended Complaint is hereby DISMISSED.

**FACTUAL BACKGROUND**

In 2010, the Affordable Care Act ("ACA") required states to establish health exchanges to facilitate, for individuals and entities, the selection, purchase, and enrollment in private health insurance plans. First Amended Complaint ("FAC") ¶ 11, ECF No. 36. As a result, the State of Hawaii established the Hawaii Health Connector ("HHC" or the "Connector"), the State's health insurance exchange. Id. ¶ 12. To assist with its obligations, and in particular, to implement necessary information technology programs and systems, HHC retained Plaintiff Mansha Consulting, LLC ("Mansha" or "Plaintiff"). Id. ¶¶ 10, 14, 15.

Mansha entered into a contract with HHC (the "IPMO Contract") which totaled over 21 million dollars. Id. ¶ 15. The IPMO Contract was funded through grants from the federal government, and accordingly, payment to Mansha was to be supplied by the Centers for Medicare and Medicaid Services ("CMS"), the responsible federal agency. Id. ¶ 16.

Mansha began work under the IPMO contract on or around April 2013. Id. ¶ 17. Beginning with the invoice dated September 1, 2014 and thereafter, HHC failed to forward Mansha's invoices for payment. Id. ¶ 18. Following several months of unpaid invoices, each of which was in the amount of $677,842.61 plus excise taxes, Mansha on or around December of 2014, ceased

further work under the IPMO Contract.  Id. ¶ 19.  From July 2014 to December 2014, Mansha continued its work under the contract based on statements and acts by the Defendants, who were directors and/or officers of HHC, that payment would be made to Mansha based on its invoices and erroneous reasons for non-payment.  Id. ¶¶ 5-7, 19.

Eventually, HHC collapsed.  Id. ¶ 20.  Since HHC's collapse, Mansha has attempted to recover its losses by demanding compensation from HHC directly, retaining Counsel to address the matter with HHC, contacting CMS directly, and communicating with other relevant third parties.  Id.

In relation to Defendants' actions in mishandling the invoice payments, Mansha alleges negligent misrepresentation, negligence, and breach of fiduciary duty claims against Defendants Tom Matsuda ("Matsuda") and Jeffrey Kissel ("Kissel") and a breach of fiduciary duty claim against Defendant Cliff Alakai ("Alakai").  Id. ¶¶ 22, 27, 32.  As a result of these actions, Mansha claims, inter alia, that its value as a company has been diminished, a pending acquisition of Mansha was derailed, and that it has lost millions of dollars.  Id. ¶¶ 25, 30, 42.

The FAC contains the following allegations against each of the Defendants.

Plaintiff only alleges a claim for breach of fiduciary

3

duty against Defendant Alakai.  Id. ¶ 32.  Defendant Alakai was

a member of the Board of Directors for HHC during the relevant

time period and at some point might have served as a treasurer

for the Board of Directors.[1]  Id. ¶ 33.[2]  Alakai knew or should

have known that HHC became insolvent and had a duty to Mansha

to, inter alia, avoid any actions that unduly risked assets

which could be used to pay Mansha's claim.  Id. ¶¶ 39-40.

Mansha alleges that Alakai refused to forward Mansha's invoices

---

[1] The Court notes that it is uncommon for a corporation's
board of directors to have a treasurer.  A corporation generally
has an officer who is a treasurer.

[2] Mansha also alleges that Defendants "received some degree
of compensation for their respective roles within the
Connector."  FAC ¶ 36.  Defendant Alakai attaches a declaration
and exhibit with his Motion to show that this allegation is
false.

Federal Rule of Civil Procedure ("Rule") 12(d) governs the
Court's consideration of matters outside the pleadings submitted
on a motion to dismiss for failure to state a claim.  This Rule
provides, "If, on a motion under Rule 12(b)(6) . . . matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56.  All parties must be given a reasonable
opportunity to present all the material that is pertinent to the
motion."  Fed. R. Civ. P. 12(d).  "The court's decision whether
to consider 'matters outside the pleadings'—that is, materials
beyond those incorporated into or attached to the pleadings or
of which the court may take judicial notice—is a discretionary
one."  Shugart v. GYPSY Official No. 251715, its Engines, Mach.,
Appurtenances, No. 2:14-CV-1923RSM, 2015 WL 1965375, at *1-2
(W.D. Wash. May 1, 2015).

The Court declines to consider Alakai's Declaration and the
attached exhibit because Alakai expressly does not seek relief
based on these documents and, as discussed herein, the Court
grants Alakai's Motion without reference to them.  See Alakai
Motion at 3 n.1 (ECF No. 40).  Accordingly, the Court accepts
all well-pleaded factual allegations in the FAC as true.

for payment by CMS.  Id. ¶ 40.  Mansha alleges that because of

this conduct Alakai was grossly negligent in carrying out his

fiduciary duties to Mansha and breached his fiduciary duty to

Mansha.  Id. ¶¶ 41-42.

Plaintiff alleges negligent misrepresentation,

negligence, and breach of fiduciary duty claims against

Defendant Matsuda.  Id. ¶¶ 22, 27, 32.  Defendant Matsuda was

the Interim Executive Director of HHC "from a date unknown"

until approximately October 2014.  Id. ¶ 23a.  Matsuda was

responsible for HHC's overall administration.  Id. ¶ 23b.

As the basis for Plaintiff's negligent

misrepresentation claim, Mansha alleges that Matsuda negligently

misinformed Mansha that the invoices were not being forwarded to

CMS because there was a restriction on funds initiated by either

CMS or HHC.  Id. ¶¶ 23d-e.  Mansha later learned that although

such a restriction may have existed for a short period of time,

the restrictions had been cleared and its invoices could have

been paid.  Id. ¶ 23e.  Matsuda also made erroneous assurances

to Mansha that it would be paid on its submitted invoices, in

effect urging Mansha to "hang in there."  Id. ¶ 23f.  As a

result of this misinformation, Mansha forwent action which it

otherwise would have taken and which could have prevented damage

to Mansha.  Id. ¶ 23g.  Plaintiff further alleges that the duty

owed by Matsuda to Mansha is imposed by Restatement (Second) of

Torts § 552 to exercise reasonable care in obtaining or communicating information for the guidance of others in their business transactions. Id. ¶ 23j.

As the basis for its negligence claim against Matsuda, Plaintiff alleges that Matsuda owed Mansha a duty to take reasonable steps to prevent damage to Mansha which could foreseeably result from these negligent misrepresentations. Id. ¶¶ 28h-i. Because Matsuda failed to take any such action, he breached his duty to Mansha. Id. For its breach of fiduciary duty claim against Matsuda, Plaintiff makes the same allegations as it does against Defendant Alakai. Id. ¶¶ 39-42.

Plaintiff alleges negligent misrepresentation, negligence, and breach of fiduciary duty claims against Defendant Kissel. Id. ¶¶ 22, 27, 32. Defendant Kissel was HHC's Executive Director starting in October 2014 and was responsible for HHC's overall administration. Id. ¶¶ 24a-b. Plaintiff's claims against Kissel are substantially the same as Plaintiff's claims against Matsuda. See id. ¶¶ 24b-k, 29b-i, 39-42.

**PROCEDURAL BACKGROUND**

Plaintiff filed a Complaint against Defendants on October 28, 2016. ECF No. 1. The Complaint raised claims for negligence and negligent breach of fiduciary duty against all

Defendants.[3]  Id.  On December 5, 2016, Matsuda filed a Motion to

Dismiss Complaint Filed October 28, 2016.  ECF No. 12.  Mansha

filed its Opposition on December 30, 2016.  ECF No. 19.  Alakai

and Kissel filed a Non-Substantive Joinder to Matsuda's Motion

to Dismiss on December 30, 2016.  ECF No. 21.  Matsuda filed a

Reply on January 20, 2017.  ECF No. 26.  On December 30, 2016,

Alakai and Kissel also filed a Pre-Answer Motion to Dismiss

Complaint Filed on October 28, 2016.  ECF No. 20.  Plaintiff

filed its Opposition on January 13, 2017.  ECF No. 25.  Alakai

and Kissel filed a Reply on January 20, 2017.  ECF Nos. 27-28.

On January 20, 2017 Matsuda filed a Non-Substantive Joinder to

Defendants Alakai and Kissel's Reply.  ECF No. 29.  The Court

held a hearing on both motions to dismiss on February 2, 2017.

On February 16, 2017, the Court entered an Order granting

Defendants' motions to dismiss the Complaint without prejudice

("February 16, 2017 Order").  ECF No. 34.

        On March 17, 2017, Plaintiff filed its First Amended

Complaint, alleging claims for negligent misrepresentation,

negligence, and breach of fiduciary duty.  ECF No. 36.  As

previously discussed, Plaintiff alleges all of these claims

against Defendants Matsuda and Kissel but only breach of

---

        [3] The Complaint also raised claims against Defendants Eric
Alborg and Diane Reich.  ECF No. 1.  The FAC does not allege
claims against them.  ECF No. 36.

fiduciary duty against Defendant Alakai.  Id.

On March 31, 2017, Defendant Matusda filed a Motion to Dismiss First Amended Complaint Filed March 17, 2017 ("Matsuda Motion").  ECF No. 37.  On April 6, 2017, Defendant Alakai filed a Pre-Answer Motion to Dismiss First Amended Complaint Filed on March 17, 2017 ("Alakai Motion").  ECF No. 40.  On that same date, Defendant Kissel filed a Substantive Joinder to Defendant Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017 and to Defendant Cliff Alakai's Pre-Answer Motion to Dismiss First Amended Complaint Filed on March 17, 2017 ("Kissel Joinder").  ECF No. 41.

On July 13, 2017, Plaintiff filed oppositions to Defendants' Motions and Kissel's Joinder ("Pl. Alakai Opp." and "Pl. Matusda Opp.").  ECF Nos. 45, 46.  On July 20, 2017, Defendants Matsuda and Alakai filed replies ("Matsuda Reply" and "Alakai Reply") to Plaintiff's oppositions.  ECF Nos. 48, 50. Defendant Kissel also filed a reply in further support of his Joinder ("Kissel Reply").  ECF No. 49.  The Court held a hearing on these Motions on August 3, 2017.[4]

---

[4] On August 8, 2017, Plaintiff filed a Non-Hearing Motion for Leave to File Statement of Clarification of Response at Oral Argument.  ECF No. 54.  On that same date, Defendant Matsuda filed an Opposition to Plaintiff's Motion.  ECF No. 55.  On August 10, 2017, the Court issued a minute order denying Plaintiff's Motion for Leave to File Statement of Clarification of Response at Oral Argument.  ECF No. 56.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

9

between possibility and plausibility of entitlement to relief.'"
Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule
12(b)(6) it should grant leave to amend unless the pleading
cannot be cured by new factual allegations.  OSU Student All. v.
Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

I.  **Count I: Negligent Misrepresentation**

a. **Whether Mansha's Negligent Misrepresentation Claim Must Be Dismissed Pursuant to the Court's February 16, 2017 Order**

Defendants Matsuda and Kissel argue that Mansha's
negligent misrepresentation claim must be dismissed pursuant to
the law of the case.  The Court's February 16, 2017 Order held:

> [T]he allegations in the Complaint involve
> duties owed by Defendants to HHC or duties
> that—if the Defendants had at all—arose from
> the contract between HHC and Mansha.
>
> . . .
>
> Moreover, the negligent conduct alleged
> invokes duties that would only arise from
> the contract between HHC and Mansha.  Mansha
> essentially claims that . . . Defendants
> Matsuda and Kissel negligently misinformed
> Mansha about the reasons for delay and the
> status of the payments, leading to
> additional damages.  See Compl. ¶¶ 26-28.
> These allegations involve HHC's alleged
> failure to perform on the contract, i.e.,
> its failure to pay Mansha for its work.
> They do not involve violations of any duty
> independently recognized by Hawaii tort law.
> See Francis, 971 P.2d at 708.  As in

> Bernstein, Mansha has "failed to establish
> any cognizable duty under [Hawaii] law apart
> from and independent of [HHC's] contractual
> promises." 827 F.2d at 482; see also
> Kelomar, 413 Fed. Appx. at 982-83 ("A person
> may not ordinarily recover in tort for the
> breach of duties that merely restate
> contractual obligations." (quoting Aas v.
> Superior Court, 12 P.3d 1125, 1135 (Cal.
> 2000)).

February 16, 2017 Order at 14-16. In addition, the Court's

February 16, 2017 Order specifically held that affirmative

representations that Mansha would be paid did not give rise to a

tort claim:

> Mansha attempts to argue that its
> allegations that Defendants . . . made
> affirmative representations that Mansha
> would be paid involved a duty independent
> from the contract between Mansha and HHC.
> However, this claim attempts to "turn[] a
> promise to perform into a statement of fact
> so that failure to perform automatically
> shows a misrepresentation of intention to
> perform." Catamount Radiology, P.C. v.
> Bailey, No. 1:14-CV-213, 2015 WL 3795028, at
> *14 (D. Vt. June 18, 2015) (quoting Howard
> v. Usiak, 775 A.2d 909, 913 (Vt. 2001)). As
> noted by the Vermont Supreme Court in Howard
> v. Usiak, if such a promise to perform were
> actionable in tort, "any breach of contract
> would be misrepresentation so that negligent
> breach would be a tort." 775 A.2d at 913.
> The court in Howard recognized "the need to
> keep tort and contract theories separate so
> that negligence concepts do not overrun the
> limitations on contractual rights and
> remedies." Id. The same concerns were
> outlined by the Hawaii Supreme Court in
> Francis, and are applicable here.

February 16, 2017 Order at 17.[5]

The FAC's allegations in the negligent misrepresentation claim are substantively the same as those in the original complaint's negligence claim. The only major difference between these claims is that Mansha alleges that the duty owed by Defendants to Mansha is imposed by Restatement (Second) of Torts § 552 to exercise reasonable care or competence in obtaining or communicating information for the guidance of others in their business transactions. FAC ¶¶ 23j, 24j (citing State of Hawaii ex rel. Bronster v. U.S. Steel Corp., 82 Haw. 32, 41, 919 P.2d 294, 303 (1996)).[6] Therefore, pursuant to the law of the case, which held that the conduct alleged invokes duties that would only arise from the contract between HHC and Mansha, Count I of the FAC must be dismissed because it fails to allege any additional conduct that would give rise to an independent duty in tort.

_____

[5] The Court notes that the affirmative representations that Mansha would be paid are not the only misrepresentations that Mansha alleges in its FAC. The FAC also alleges that Defendants negligently misinformed Mansha about the cause of the payment delays, stating that Mansha's invoices were not being forwarded to CMS for payment due to a restriction on funds initiated by either CMS or the Connector. FAC ¶¶ 23d-e, 24d-e. However, as previously mentioned, this allegation was in Mansha's original complaint, which the Court's February 16, 2017 Order found did not give rise to a cognizable tort claim.

[6] The FAC also added allegations regarding damages resulting from the alleged negligent misrepresentations. See FAC ¶¶ 25a-d.

The Court finds no basis to depart from the law of the case on this issue. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993). A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. Thomas, 983 F.2d at 155.

Throughout its opposition, Mansha argues that this case gives rise to independent tort duties rather than contract duties. Specifically, Mansha argues that at the time of the alleged negligent misrepresentations HHC was in breach of the contract and any work Mansha continued to perform was extra-contractual because Mansha was no longer obligated to perform due to the contract breach. See Pl. Matsuda Opp. at 18-20, 25-26. The Court finds this argument problematic for several reasons. First, despite Mansha's argument that it was not performing under the contract after HHC's breach, Mansha's FAC

alleges just the opposite—"MANSHA only continued work under the IPMO contract as a direct result of various negligent misrepresentations by Defendants."  FAC ¶ 18 (emphasis added); see also id. ¶ 19 ("MANSHA continued to work under the IPMO Contract based on reasonable reliance upon various negligent statements and acts by Defendants . . .").  The FAC, therefore, alleges that Mansha continued to work under the contract and not that its work was extra-contractual.

Second, Mansha's FAC only alleges that Mansha was "faced with a seeming breach by the Connector" but fails to allege that HHC in fact breached the contract and that Mansha was no longer obligated to perform under it.  Id. ¶ 23h.  Third, Mansha's argument assumes that a breach by a party to a contract necessarily cancels the contract.  However, a breach by a party to a contract does not always cancel the contract.  See 23 Williston on Contracts § 63:3 (4th ed.); 17A Am. Jur. 2d Contracts § 549.  Generally, if the breach is material, the non-breaching party may have grounds to cancel the contract.  See id.  If, on the other hand, the breach is partial, the non-breaching party's remedy is for damages, and the non-breaching party is still bound by the contract and may not abandon performance.  See id.  Mansha has failed to allege that there was a breach that would serve as a basis for cancelling the contract.  As previously discussed, Mansha's FAC does not allege

that the contract was breached let alone cancelled.

Accordingly, the Court finds no basis to depart from the law of the case and dismisses Count I with prejudice.

**b. Whether the Economic Loss Rule Bars Mansha's Negligent Misrepresentation Claim**

The Court also finds that the economic loss rule bars Mansha's negligent misrepresentation claim. Hawaii recognizes the economic loss rule, which precludes recovery in tort for purely economic damages. Commerce & Indus. Ins. Co. v. Watts Water Techs., Inc., No. 15-00324 HG-KJM, 2016 WL 6471247, at *4 (D. Haw. Oct. 31, 2016). It "marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others." Leis Family Ltd. P'ship v. Silversword Eng'g, 126 Haw. 532, 535, 273 P.3d 1218, 1221 (Haw. Ct. App. 2012) (internal quotation marks and citation omitted). These tort standards are imposed by society, without regard to any agreement. The doctrine "was designed to prevent disproportionate liability and allow parties to allocate risk by contract." Id. (internal quotation marks and citation omitted). "Hawaiʻi law will not allow tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the

breach of the contract." Francis v. Lee Enters., Inc., 89 Haw.
234, 235, 971 P.2d 707, 708 (1999).

In Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, No.
CIV. 12-00486 SOM, 2015 WL 1442961, at *12-16 (D. Haw. Mar. 27,
2015), the court analyzed Hawaii case law on whether the
economic loss rule bars a claim for negligent misrepresentation.
The court held, "As this court reads those cases, the
contractually based negligent misrepresentation claims are
barred, but [those not based on contractual obligations]
survive." Id. at *13; compare State of Hawaii ex rel. Bronster
v. U.S. Steel Corp., 82 Haw. 32, 40, 919 P.2d 294, 302 (1996)
(holding that the tort of negligent misrepresentation was not
precluded by the economic loss doctrine), with City Exp., Inc.
v. Express Partners, 87 Haw. 466, 469-70, 959 P.2d 836, 839-40
(1998) (distinguishing U.S. Steel and holding that in the
context of construction litigation a tort action for negligent
misrepresentation alleging damages purely based on economic loss
is not available to a party in privity of contract with a design
professional).[7]

The Court finds this analysis persuasive, especially

_____

[7] In City Exp., the Hawaii Supreme Court differentiated U.S.
Steel, emphasizing that "the issue of whether contractual
privity would prevent the application of section 552 was not
presented. No contract existed between the steel manufacturer
and the State of Hawai'i." 87 Hawaii at 469, 959 P.2d at 839.

in light of the previously discussed Hawaii rule that tort
recovery is not allowed in the absence of conduct that violates
a duty that is independently recognized by tort law and
transcends the breach of the contract.[8]  As previously discussed
and pursuant to the February 16, 2017 Order, the alleged
misrepresentations here are contract-based because they relate
to whether HHC was able to perform under its contract with
Mansha.  The allegations here do not relate to
misrepresentations outside of the contract and do not transcend
a breach of contract action.  The damages alleged also do not
relate to any specific harm arising from the alleged
misrepresentations that would not also exist from a breach of
contract claim.

Again, Mansha argues that because Defendants in this
case already breached the contract at the time of the negligent
misrepresentation, the duty that Defendants owed to Mansha was
extra-contractual.  Pl. Matsuda Opp. at 25.  For the reasons

---

[8] This view is also consistent with the Ninth Circuit's
reading of the case law regarding the economic loss doctrine.
Plaintiff discusses Giles v. Gen. Motors Acceptance Corp., 494
F.3d 865, 875-79 (9th Cir. 2007), where the court addressed
whether the economic loss rule barred fraud and conversion
claims under Nevada law.  In addressing this issue, the Ninth
Circuit noted that courts have applied the economic loss rule to
bar recovery on tort claims beyond negligence and strict
liability where the claims have "amounted to nothing more than a
failure to perform a promise contained in a contract." Id. at
876.  In such cases, the plaintiff has been entitled only to
ordinary contract damages.  Id.

previously discussed, the Court does not find this argument persuasive.  Accordingly, the Court also dismisses Count I because it is barred by the economic loss rule.[9]

## II.  Count II: Negligence

### a.  Whether Mansha Pleads a Cognizable Negligence Claim

Defendants Matsuda and Kissel also move to dismiss Count II (Negligence) of the FAC pursuant to the Court's February 16, 2017 Order, which dismissed Mansha's negligence claim because it failed to allege that Defendants owed Mansha a cognizable duty recognized by Hawaii tort law apart from and independent of HHC's contractual promises.  Defendants Matsuda and Kissel argue that Mansha's FAC fails to overcome the defects that were fatal to this claim as originally pled.  The Court agrees.

Mansha's amended negligence claim is substantively the same as the negligence claim alleged in its original complaint.[10]

---

[9] Defendants also move to dismiss Count I because Mansha fails to allege the necessary elements to establish a claim for negligent misrepresentation.  The Court declines to address this argument because it has already dismissed Count I on the basis that it does not allege an independent tort claim.  The injury that Mansha alleges is based in contract law not tort law and therefore Mansha cannot allege a plausible negligent misrepresentation claim.

[10] In its opposition, Mansha states that it alleges additional allegations.  However, the new allegation it discusses was in its original complaint.  Compare FAC ¶ 23(d) ("Instead, Defendant MATSUDA negligently misinformed MANSHA about the causes for the delay, and also about the status of
(continued . . . )

The only substantive difference is that Mansha deleted its

allegation that Defendants owed Mansha "a duty to take

reasonable care in carrying out [their] responsibilities, to

protect MANSHA against foreseeable risks," which the February

16, 2017 Order held was conclusory and insufficient to withstand

a motion to dismiss.  Compl. ¶¶ 27g, 28g; February 16, 2017

Order at 16.  In place of that allegation, Mansha has now

alleged the following:

> MATSUDA knew or should have known that those
> statements were false, that MANSHA would
> rely on them, and that the negligent
> statements <u>created</u> a heightened risk of harm
> to MANSHA.
>
> Accordingly, after making these negligent
> misrepresentations and thus creating a
> foreseeable risk of harm, Defendant MATSUDA
> owed MANSHA a duty to take steps to prevent
> damage to MANSHA which could foreseeably
> result from those negligent
> misrepresentations.

FAC ¶¶ 28g-h (emphasis in original); <u>see also</u> <u>id.</u> ¶¶ 29g-h

(alleging the same as to Defendant Kissel).[11]  However, these

allegations do not cure the issue the Court previously

---

( . . . continued)
payments to MANSHA."), <u>with</u> Compl. ¶ 27(d)(same).  However, as
previously discussed, the Court already concluded that such
conduct did not involve violations of any duty independently
recognized by Hawaii tort law, <u>see</u> February 16, 2017 Order at
16, and the Court finds no basis to depart from the law of the
case.

[11] The Court also notes that the FAC included additional
allegations regarding damages resulting from the alleged
negligence.  <u>See</u> FAC ¶¶ 30a-d.

recognized in its February 16, 2017 Order—whether Defendants owed Mansha a cognizable duty independently recognized by Hawaii tort law apart from and independent of HHC's contractual promises.

Mansha argues in its opposition that its FAC establishes that Defendants owed a duty under its negligence cause of action. Mansha discusses <u>Ah Mook Sang v. Clark</u>, 130 Haw. 282, 308 P.3d 911 (2013) for the proposition that a duty exists for an individual who unreasonably created a heightened risk of harm through their affirmative actions to minimize the risk of that harm. Pl. Matsuda Opp. at 5-7. Mansha discusses the various factors delineated in <u>Ah Mook Sang</u> to determine whether a tort duty exists. However, the Court's February 16, 2017 Order already distinguished <u>Ah Mook Sang</u> from the present case because, <u>inter alia</u>: (1) it involved the risk of physical injury; (2) it emphasized that the duty at issue related to preventing physical harm from occurring and the physical harm at issue was death; and (3) defendant had a special relationship with plaintiff who was an invitee on his property. <u>See</u> February 16, 2017 Order at 19-21. None of these facts exist in the FAC.

Apart from this argument, all of the legal arguments Mansha makes in its opposition are related to its negligent misrepresentation count rather than its pure negligence count. In sum, Mansha has failed to support its claim that Defendants

Matsuda and Kissel owed Mansha a duty under tort law to prevent economic injury. Mansha has not cited to any authority recognizing that a duty would exist under similar circumstances. Thus, the FAC fails to plead sufficient allegations to show a duty, independently recognized by tort law, to support its negligence claim. Accordingly, the Court grants Defendants Matsuda and Kissel's motion to dismiss Count II with prejudice.

### b. Whether Plaintiff's Negligence Claim is Barred by the Economic Loss Rule

Defendants Matsuda and Kissel also argue that the Court should dismiss Plaintiff's negligence count because it is barred by the economic loss rule. In response, Plaintiff argues that the economic loss doctrine does not bar claims of negligent misrepresentation. However, Plaintiff does not clearly make an argument specific to its separate negligence claim.

As previously discussed, the economic loss rule precludes recovery in tort for purely economic damages. Commerce & Indus. Ins. Co. v. Watts Water Techs., Inc., No. 15-00324 HG-KJM, 2016 WL 6471247, at *4 (D. Haw. Oct. 31, 2016). "Hawai'i law will <u>not</u> allow tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." Francis v. Lee Enters., Inc., 89 Haw. 234, 235, 971 P.2d 707, 708 (1999). "[N]egligence claims—

specifically, those based on violations of contract

specifications—fall within the purview of the economic loss

rule." Ass'n of Apartment Owners of Newtown Meadows ex rel. its

Bd. of Directors v. Venture 15, Inc., 115 Haw. 232, 292-93, 167

P.3d 225, 285-86 (2007), as corrected on denial of

reconsideration (Sept. 20, 2007) (emphasis in original).

As previously discussed, Plaintiff has failed to

plausibly allege that Defendants Matsuda and Kissel owed a duty

to Mansha that is independently recognized by principles of tort

law and transcends any claim for breach of contract.  Rather,

Plaintiff's negligence claim is based on contract violations.

Therefore, the Court finds that the economic loss doctrine bars

Plaintiff's negligence claim.  Accordingly, the Court grants

Defendants Matsuda and Kissel's motion to dismiss Count II of

the FAC and dismisses Count II with prejudice.

## III. Count III: Breach of Fiduciary Duty

### a. Breach of Fiduciary Duty Claim Against Defendant Alakai

#### i. Whether Defendant Alakai Owed a Fiduciary Duty to Mansha

##### 1. Whether the Trust Fund Doctrine Applies to the Conduct Alleged in the FAC

Defendant Alakai argues that the breach of fiduciary

duty claim against him should be dismissed because he did not

owe a fiduciary duty to Mansha under the trust fund doctrine.

Mansha asserts that the trust fund doctrine, followed in Hawaii,

serves as a basis for fiduciary duties to attach to the
Defendants.

The trust fund doctrine imposes certain fiduciary
duties on a corporation's directors when the corporation becomes
insolvent.  The theory underlying the doctrine is that when this
occurs the assets of a corporation "exist for the benefit of all
of its creditors and that thereafter no liens or rights can be
created either voluntarily or by operation of law whereby one
creditor is given an advantage over others."  15A William Meade
Fletcher, <u>Fletcher Cyclopedia of the Law of Private Corporations</u>
§ 7369 (rev. vol. 2009).  The assets at issue "may consist of
property in the possession of the corporation, accounts
receivable . . . claims of various kinds . . . [and] payments
made to creditors in preference of the rights of other
creditors. . ."  <u>Id.</u>  Under the trust fund doctrine,
"[c]reditors may . . . look to the personal assets of the
directors for breaching their fiduciary duty in improperly
distributing the assets of the corporation."  <u>Id.</u>

Very few cases in Hawaii have involved the trust fund
doctrine and most of these cases are over a hundred years old.
<u>See, e.g.</u>, <u>Hemenway v. Honolulu Clay Co.</u>, 18 Haw. 187 (Haw.
Terr. 1907); <u>Troy Laundry Mach. Co. v. Sanitary Steam Laundry</u>

<u>Co.</u>, 18 Haw. 388 (Haw. Terr. 1907); <u>California Feed Co. v. Club</u>

<u>Stables Co.</u>, 10 Haw. 209 (Haw. Rep. 1896).[12]

---

[12] As indicated, the Court is only aware of three cases
applying the trust fund doctrine in Hawaii and there have been
no Hawaii decisions discussing the doctrine for over a hundred
years, except for <u>In re Ellis</u>, 487 P.2d 286, 288-89 (Haw. 1971).
<u>In re Ellis</u> involved the dissolution of a for-profit
corporation, where pursuant to Haw. Rev. Stat. § 416-123 the
corporation's directors became trustees for the creditors and
stockholders by operation of law.  In turn, as noted by the
Hawaii Supreme Court, Haw. Rev. Stat. § 416-124 governed the
duties and liabilities of the trustees, providing:

> The title to all assets and property, real,
> personal, and mixed belonging to the
> corporation shall, immediately upon the
> dissolution thereof . . . vest in the
> trustee or trustees for the creditors and
> stockholders or members of the corporation
> dissolved.
>
> Under the name of the trustee or trustees .
> . . the trustee or trustees shall have
> power: to sue for and collect the debts,
> claims, and demands due to the corporation,
> or compound and settle any claims as they
> may deem best; to have, hold, reserve, sell,
> and dispose of property, real, personal, and
> mixed; to adjust and pay all debts of the
> corporation dissolved; . . . to exercise all
> powers of the dissolved corporation; . . .
> to divide among the stockholders . . .
> moneys and other properties that remain
> after paying the debts and necessary
> expenses; and they shall be jointly and
> severally liable to the creditors and to the
> stockholders . . . to the extent of the
> corporation property which shall come into
> their hands.

<u>Id.</u> at 288.  The court pointed out that statutes:

(continued . . . )

The Supreme Court of the Republic of Hawaii recognized this doctrine, noting that:

> when . . . a corporation is hopelessly insolvent and unable to carry out objects for which it is created, the directors must be regarded as trustees of the property for the benefit of the creditors and stockholders, and it is then their duty to wind up the affairs of the corporation for the benefit of all concerned[.]

California Feed Co., 10 Haw. at 212; see also Hemenway, 18 Haw. at 189 (stating that the "trust fund theory" "is that the capital stock of a corporation, and especially its unpaid portion, is a trust fund for the benefit of creditors").

Defendants argue that the trust fund doctrine under Hawaii law only prohibits self-dealing, for example by directors

---

( . . . continued)
> such as ours here in Hawaii, HRS § 416-123, treat the existence of the corporation as terminated upon dissolution but nonetheless allow suits to be brought or continued. These statutes resulted from a demand by stockholders and creditors for equitable relief and embodied the 'trust fund theory' by authorizing the directors at the time of dissolution to serve as trustees.

Id. at 289.
    The Court notes that the Hawaii statutes discussed in In re Ellis, which have since been repealed and codified in a different form, applied specifically in the context of dissolution and made no reference to insolvency. The legislative history of these statutes in In re Ellis does not make any reference to the trust fund doctrine to show that they were enacted to replace the trust fund doctrine under Hawaii common law.

preferring themselves over other creditors, and does not prohibit other types of conduct.[13]  Although the Court will not go so far as to hold that the trust fund doctrine in Hawaii requires self-dealing, the Court agrees with Defendants that the conduct alleged here is insufficient for the trust fund doctrine to apply under Hawaii law.

The trust fund doctrine in Hawaii has only been applied to conduct involving self-dealing.  <u>Troy Laundry Mach. Co. v. Sanitary Steam Laundry Co.</u>, 18 Haw. 388 (Haw. Terr. 1907) involved allegations that a corporation's director engaged in self-dealing and discussed cases in other jurisdictions involving similar conduct.  <u>Hemenway v. Honolulu Clay Co.</u>, 18 Haw. 187 (Haw. Terr. 1907) examined the trust fund doctrine where stockholders of an insolvent corporation allegedly received shares in excess of what they paid.  <u>See</u> 18 Haw. at 188.

Similarly, the cases Defendants mention from outside Hawaii have typically applied the trust fund doctrine in the context of self-dealing.  <u>In re Kallmeyer</u>, 242 B.R. 492, 496 (B.A.P. 9th Cir. 1999), discussing Oregon law, states that pursuant to the trust fund doctrine, the corporation's directors

---

[13] Defendants Matsuda and Kissel make the same argument. The Court addresses the arguments made by Defendants Matsuda and Kissel on this issue in this section.

hold its assets in trust for equal distribution among its creditors and cannot use those assets to prefer themselves as creditors to the prejudice of general creditors. "[A] director who breaches this fiduciary duty by misappropriating corporate assets for personal gain will be held liable under the trust fund doctrine." Id. In re: Shoe Pavilion Inc, No. 1:08-AP-01534-MT, 2013 WL 12114073 (Bankr. C.D. Cal. Feb. 21, 2013), report and recommendation adopted sub nom., In re: Shoe Pavilion, Inc., No. 1:08-AP-01534, 2013 WL 12113232 (C.D. Cal. May 30, 2013) discusses California law on the trust fund doctrine and states:

> "Recovery for breaching the fiduciary duties imposed under the trust-fund doctrine in California generally pertains to cases where the directors or officers of an insolvent corporation have diverted assets of the corporation for the benefit of insiders or preferred creditors." While no California cases "expressly limited the fiduciary duty under the trust fund doctrine to the prohibition of self-dealing or the preferential treatment of creditors, the scope of the trust fund doctrine in California is reasonably limited to cases where directors or officers have diverted, dissipated, or unduly risked the insolvent corporation's assets." "In other words, the doctrine is not applied to create a duty owed by directors to creditors solely due to a state of corporate insolvency. Application of the doctrine requires, in addition, that directors have engaged in conduct that diverted, dissipated, or unduly risked corporate assets that might otherwise have been used to satisfy creditors' claims."

27

Id. (quoting Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1040-41, 100 Cal. Rptr. 3d 875, 893 (2009)) (internal citations omitted).  California courts have typically found violations of the trust fund doctrine only in situations where there was self-dealing by directors or preferential treatment of creditors, and the "most frequently cited cases interpreting California's trust fund doctrine . . . involve acts that fall into one or both of these categories."  Peter M. Gilhuly & Ted A. Dillman, Corporate Fiduciary Liability to Creditors and Interested/Director Transactions: Two Key Distinctions Between California and Delaware Fiduciary Duty Law That Come Under Scrutiny During Insolvency, 31 Cal. Bankr. J. 827, 830 (2012); see also id. at 831 ("While the Berg court's language suggests that any 'preferential treatment of creditors' of an insolvent corporation is prohibited by the trust fund doctrine, almost all of the leading cases finding trust fund doctrine violations involve preferential payment to insider creditors." (emphasis in original)).

Moreover, other jurisdictions have expressly limited the trust fund doctrine to circumstances involving self-dealing. See, e.g., Bank of Am. v. Musselman, 222 F. Supp. 2d 792, 798-99 (E.D. Va. 2002) (applying Virginia law and stating "because the trust fund doctrine does not operate in the absence of self-

dealing, it is of no avail to plaintiffs here as there are no allegations that Hacker engaged in self-dealing acts to divert ECS assets from plaintiffs' reach"); St. James Capital Corp. v. Pallet Recycling Assocs. of N. Am., Inc., 589 N.W.2d 511, 517 (Minn. Ct. App. 1999) ("Absent self-dealings to the detriment of other creditors, the directors and officers of a corporation, once it becomes insolvent, are not transformed into a trust relationship and do not owe a legal duty to liquidate corporate assets in such a way as to minimize losses incurred by the corporation's creditors.").

Mansha alleges that despite notifications from Mansha, "Defendants failed to investigate and take reasonable action to effect proper forwarding and payment of MANSHA's invoices by CMS . . . Instead, Defendants neglected and refused to forward MANSHA's invoices for payment by CMS, thereby squandering, dissipating, and unduly risking an asset that could have been used to pay MANSHA," HHC's creditor. FAC ¶ 40.

The Court finds that this conduct alone is insufficient to give rise to the trust fund doctrine under Hawaii law. Hawaii case law has only applied the trust fund doctrine to cases involving self-dealing. As discussed herein, other jurisdictions have expressly limited the trust fund doctrine to conduct involving self-dealing. Plaintiff relies on California law—specifically the previously quoted language from

the Berg decision—to support its argument.  However, even California law, which does not expressly limit the trust fund doctrine to situations involving self-dealing or the preferential treatment of creditors, states that the trust fund doctrine does not create a broad fiduciary duty.  In addition, as previously discussed, California has typically applied the trust fund doctrine to situations involving self-dealing or the preferential treatment of creditors, neither of which Plaintiff alleges here.

The conduct that Plaintiff asserts seeks to establish a broader fiduciary duty than the one created under the trust fund doctrine.  Plaintiff does not claim that Defendants treated it differently than other creditors or that Defendants preferred themselves over Mansha.  Accordingly, the Court dismisses this claim for breach of fiduciary duty under the trust fund doctrine with prejudice.[14]

---

[14] The Court notes that the circumstances of this case do not seem to give rise to the trust fund doctrine for another reason.  Here, the funds at issue were to come from CMS and not HHC, and it does not appear that HHC had received such funds from CMS since, as alleged by Mansha (FAC ¶ 40), HHC had not yet forwarded the invoices to CMS for payment.  Therefore, HHC's insolvency does not seem to be directly related to whether Mansha received payment.  Because HHC's insolvency seems to be immaterial to the injury Mansha suffered, the trust fund doctrine does not appear to apply under the facts of this case.

**2. Whether Mansha Must Allege that HHC Had
Determined to Discontinue the Prosecution of
Business for the Trust Fund Doctrine to Apply**

Defendant Alakai argues that the FAC must be dismissed

pursuant to the Court's February 16, 2017 Order because Mansha

has not alleged that HHC determined to discontinue the

prosecution of business.  In a footnote, the February 16, 2017

Order states:

> Troy Laundry cites to a Seventh Circuit case
> which discussed the trust fund doctrine as
> imposing duties on both directors and
> officers.  Id. at 390 (citing Sutton Mfg.
> Co. v. Hutchinson, 63 F. 496 (7th Cir.
> 1894)).  In Sutton, however, the court
> described the duty of directors and officers
> as being triggered "when a private
> corporation is dissolved or becomes
> insolvent, and determines to discontinue the
> prosecution of business."  63 F. at 501
> (emphasis added); see also id. at 502
> (same).  Here, the Complaint does not allege
> that HHC "determin[ed] to discontinue the
> prosecution of business" at the time
> Defendants knew or should have known of
> HHC's insolvency.  See id.

February 16, 2017 Order at 25 n.4.  Accordingly, under the

Court's prior holding, the trust fund doctrine does not apply

unless the corporation is dissolved or becomes insolvent and

determines to discontinue the prosecution of its business.

The Court finds no reason to depart from the law of

the case as to this issue.  In Sutton, which was quoted by the

Hawaii case Troy Laundry, the court emphasized throughout its

opinion that the trust fund doctrine did not apply unless the

corporation determines to discontinue the prosecution of business.  The court held:

> when [a corporation] becomes insolvent, <u>and has no purpose of continuing business</u>, the power to sell, dispose of, and transfer its estate is not altogether without limitation
>
> . . .
>
> It is, we think, the result of the cases that when a private corporation is dissolved or becomes insolvent, <u>and determines to discontinue the prosecution of business</u>, its property is thereafter affected by an equitable lien or trust for the benefit of creditors.
>
> . . .
>
> In our judgment, <u>when a corporation becomes insolvent and intends not to prosecute its business, or does not expect to make further effort to accomplish the objects of its creation</u>, its managing officers or directors come under a duty to distribute its property or its proceeds ratably among all creditors, having regard of course to valid liens or charges previously placed upon it.

63 F. at 500-03 (emphasis added)(internal quotation marks and citation omitted).

Plaintiff argues that the law of the case should not apply because <u>Sutton</u> mentioned the cessation of business only because it was relevant in the case and did not hold that the determination to discontinue business was a necessary element for the trust fund doctrine to apply.  Pl. Alakai Opp. at 12. Given the clear and consistent language in <u>Sutton</u>, however, the

Court disagrees.  In addition, the cases Plaintiff discusses,
which are quoted in Sutton, do not impact the Court's
interpretation of Sutton.

In addition, other jurisdictions have found that the
trust fund doctrine does not apply when a corporation is
insolvent but still operating.  See, e.g., Aurelius Capital
Master, Ltd. v. Acosta, No. 3:13-CV-1173-P, 2014 WL 10505127, at
*4 (N.D. Tex. Jan. 28, 2014) ("No Texas cases indicate that the
trust fund doctrine has expanded to apply when a corporation is
insolvent, but still operating."); In re Kallmeyer, 242 B.R.
492, 496 (B.A.P. 9th Cir. 1999) ("Oregon has adopted the trust
fund doctrine which provides that directors of a corporation owe
its creditors a fiduciary duty if either of the following
occurs: (1) the corporation suspends its business and becomes
insolvent or (2) the corporation's assets are placed in the
possession of the court and it ceases to be a going concern."
(citing Gantenbein v. Bowles, 103 Or. 277, 285, 203 P. 614, 617
(1922) (emphasis added)).

Pursuant to the Court's February 16, 2017 Order,
Mansha's breach of fiduciary duty claim must have included
allegations that HHC determined to discontinue the prosecution
of business for the trust fund doctrine to apply.  Because the
FAC does not include such allegation, Mansha has failed to
allege a plausible breach of fiduciary duty claim based on the

trust fund doctrine.  The Court, therefore, dismisses the breach

of fiduciary duty claim as to Defendant Alakai, and as discussed

herein, as to Defendants Matsuda and Kissel.

### 3. Whether Haw. Rev. Stat. § 414D-149(e) Modifies Any Duties Alakai Owed to Mansha under the Trust Fund Doctrine

Defendant Alakai argues that Haw Rev. Stat. § 414D-

149(e) modifies any fiduciary duties that he would have under

the trust fund doctrine.[15]  Haw Rev. Stat. § 414D-149(e), part of

Hawaii's Nonprofit Corporation's Act, states: "A director <u>shall</u>

<u>not be deemed to be a trustee</u> with respect to the corporation or

with respect to any property held or administered by the

corporation, including without limit, property that may be

subject to restrictions imposed by the donor or transferor of

the property."  (emphasis added).  Defendant Alakai argues that

the trust fund doctrine cannot apply to directors of a non-

profit corporation because, pursuant to Haw. Rev. Stat. § 414D-

149(e), directors of non-profit corporations shall not be deemed

to be trustees with respect to the corporation.  The Court does

not find this argument convincing for the following reasons.

---

[15] As stated in the FAC, the establishment of HHC "was codified in Hawaii Revised Statutes §§ 435H-1-435H-12."  FAC ¶ 12.  Pursuant to Haw. Rev. Stat. § 435H-2(a), HHC was established as a "Hawaii nonprofit corporation organized and governed pursuant to chapter 414D, the Hawaii nonprofit corporations act."  Chapter 435H of the Hawaii Revised Statutes, which created HHC, was repealed in 2016 after HHC ceased operations.  <u>See</u> 2016 Haw. Sess. Laws Act 44, § 3.

Most importantly, if the Court were to adopt Defendant Alakai's purported reading of the statute, the trust fund doctrine in Hawaii would be nullified in the context of non-profit corporations. The Hawaii Supreme Court has held, "[S]tatutes which are in derogation of common law must be strictly construed . . . Where it does not appear there was legislative purpose in superseding the common law, the common law will be followed." Burns Int'l Sec. Servs., Inc. v. Dep't of Transp., 66 Haw. 607, 611, 671 P.2d 446, 449 (1983); see Lee v. Puamana Cmty. Ass'n, 109 Haw. 561, 575 n. 13, 128 P.3d 874, 888 n. 13 (2006) ("It is well settled that, in the absence of legislative intent to supersede the common law, such common law principles apply."); Watson v. Brown, 67 Haw. 252, 256, 686 P.2d 12, 14 (1984) (stating that "[a] statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication"); see also United States v. Bestfoods, 524 U.S. 51, 52 (1998) ("[T]o abrogate a common-law principle, a statute must speak directly to the question addressed by the common law."). The plain language of § 414D-149 and its legislative history reveal no legislative purpose to supersede the trust fund doctrine as established in Hawaii's common law.[16] Critically,

_____

[16] In his Reply, Defendant Alakai argues that the
(continued . . . )

the plain language of the statute makes no reference to the duties directors owe the corporation upon insolvency and the legislative history does not specifically indicate that the statute was intended to apply during insolvency. Therefore, the Court cannot apply § 414D-149(e) to negate any fiduciary duties that Defendant Alakai would have under the trust fund doctrine.[17]

Furthermore, under the trust fund doctrine, directors are not deemed trustees in the literal sense, which would be necessary for § 414D-149(e) to apply here. Rather, the trust fund doctrine "references a situation analogous to a trust relationship where fiduciary duties arise . . ." In re Moeller,

_____

( . . . continued)
legislative history shows that § 414D-149(e) was enacted to supersede the trust fund doctrine. Defendant Alakai asserts that Haw. Rev. Stat. 415B-98(c), which has since been repealed along with the entirety of Chapter 415B and replaced by Chapter 414D, required a director of a dissolved corporation to act as a trustee for its creditors if a court did not appoint a trustee. He further asserts that Chapter 414D was introduced to "repeal Hawaii's existing nonprofit corporations law and replace it with a new law based on the most recent version of the Model Nonprofit Corporations Act and allow mutual benefit societies to organize as nonprofit corporations under the existing nonprofit corporations law." Alakai Reply, Exhibit C at JK000198. The Court, however, finds that this legislative purpose does not demonstrate that the Hawaii legislature specifically intended § 414D-149(e) to supersede the trust fund doctrine as established in Hawaii's common law.
    [17] The Court notes that this holding creates tension with and supersedes the Court's February 16, 2017 Order, which applied § 414D-149(f) (in addition to other reasons) to dismiss the breach of fiduciary duty claim in the original complaint as to Defendant Alakai. However, for the reasons discussed herein, which do not relate to Chapter 414D, the Court dismisses the breach of fiduciary duty count in the FAC.

466 B.R. 525, 534 (Bankr. S.D. Cal. 2012); see Troy Laundry, 18 Haw. at 390 ("'Although such directors and officers are not technical trustees, they hold, in respect of the property under their control, a fiduciary relation to creditors . . .'" (quoting Sutton Mfg. Co., 63 F. at 501)); In re Bonnie Classics, Inc., 116 F. Supp. 646, 647 (S.D.N.Y. 1953) ("[D]irectors are not trustees in the strict, technical sense of the term, but are considered in equity as bearing a fiduciary relation to the corporation and its stockholders."); see also 15A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 7369 (rev. vol. 2009) ("The term trust fund doctrine is a misnomer to the extent it suggests an express or technical trust . . . the doctrine's reference to 'trust' . . . references a situation analogous to a trust relationship where fiduciary duties arise . . ."). Accordingly, the Court does not find Defendant Alakai's argument regarding § 414D-149(e) convincing here.

> **ii.  Whether Mansha's Breach of Fiduciary Duty Claim is Procedurally Defective Because it Failed to Join HHC**

Defendant Alakai argues that "under modern law, a creditor may only bring an action under the trust fund doctrine derivatively, and must name the corporation and/or its receiver in the action." Alakai Motion at 15. A corporation is a necessary party in a derivative suit. See Meyer v. Fleming, 327

U.S. 161, 170 (1946).

Alakai discusses the landmark case of N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007), which altered the landscape of the trust fund doctrine under Delaware law.  See Quadrant Structured Prod. Co., Ltd. v. Vertin, 115 A.3d 535, 544 (Del. Ch. 2015) (stating that Gheewalla "significantly altered the landscape for evaluating a creditor's breach-of-fiduciary-duty claim").  In that case, the court held that "individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors.  Creditors may . . . [bring] derivative claims on behalf of the insolvent corporation or any other direct nonfiduciary claim . . . that may be available for individual creditors."  Gheewalla, 930 A.2d at 103 (emphasis in original).[18]  The court reasoned that, "creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights."  Id. at 99.  The court further held, "Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors. . . [would

---

[18] The Court notes that, as discussed herein, Gheewalla is distinguishable because, inter alia, Mansha is not asserting a claim for breach of fiduciary duty on behalf of the corporation but rather on its own behalf.

create] conflict between those directors' duty to maximize the value of the insolvent corporation . . . and the . . . direct fiduciary duty to individual creditors." Id. at 103.

Since Gheewalla, courts in Delaware have appeared to move away from holding that a corporation's directors have direct fiduciary duties to creditors, which is a central principle of the trust fund doctrine. See Quadrant Structured Prod. Co. v. Vertin, 102 A.3d 155, 172-76 (Del. Ch. 2014) (detailing the history of the case law on directors' fiduciary duties to creditors when a corporation is insolvent and stating that Gheewalla established that directors of an insolvent corporation do not owe fiduciary duties to creditors); CML V, LLC v. Bax, 6 A.3d 238, 253-54 (Del. Ch. 2010), aff'd, 28 A.3d 1037 (Del. 2011), as corrected (Sept. 6, 2011) ("Today, the trust fund doctrine has been largely discredited and abandoned, but its spirit lives on in the post-insolvency corporate creditor derivative action.").[19]

---

[19] The Court notes that the application of the trust fund doctrine in Delaware was questionable prior to Gheewalla. See Prod. Res. Group LLC v. NCT Group, Inc., 863 A.2d 772, 791 (Del. Ch. 2004) (noting that "[a] strand of authority (by no means universally praised) . . . describes an insolvent corporation as becoming akin to a trust for the benefit of the creditors"); In re JTS Corp., 305 B.R. 529, 538 (Bankr. N.D. Cal. 2003) ("Delaware law has not followed an uncompromising trust fund doctrine. Although the supreme court has not had an opportunity to discuss the issue further, the lower courts . . . have generally turned away from describing directors of an insolvent
(continued . . . )

The Delaware Chancery Court has further explained that before Gheewalla, creditors could enforce the fiduciary duties that directors owed them through a direct action for breach of fiduciary duty, and under the trust fund doctrine, the directors' fiduciary duties to creditors included an obligation to manage the corporation as a trust fund for the creditors' benefit. Quadrant Structured Prod. Co., Ltd. v. Vertin, 115 A.3d 535, 544-47 (Del. Ch. 2015). However, this does not remain true post-Gheewalla. Id. at 546. Under Delaware law, the directors of an insolvent corporation do not owe any particular duties to creditors but continue to owe fiduciary duties to the corporation. Id. at 546-47. In addition, since Gheewalla, "[r]egardless of whether a corporation is solvent or insolvent, creditors cannot bring direct claims for breach of fiduciary duty. After a corporation becomes insolvent, creditors gain standing to assert claims derivatively for breach of fiduciary duty." Id.

Courts in some jurisdictions have adopted the Delaware rule from Gheewalla. See, e.g., GoHealth, LLC v. Simpson, No. 13 C 02334, 2013 WL 6183024, at *5 (N.D. Ill. Nov. 26, 2013) (predicting that the Illinois Supreme Court would follow

_____

( . . . continued)
corporation as guardians of a trust fund for the benefit of creditors.").

<u>Gheewalla</u> and holding that individual creditors of a corporation do not have standing to bring a direct breach of fiduciary duty claim after a corporation's insolvency); <u>Wells Fargo Bank, N.A.</u> <u>v. Konover</u>, No. 3:05-CV-1924 (CFD), 2011 WL 1225986, at *16 (D. Conn. Mar. 28, 2011) (stating that the three Connecticut courts to address the issue of whether individual creditors can bring a direct breach of fiduciary duty claim against directors of an insolvent corporation have adopted the rule in <u>Gheewalla</u> and holding the same); <u>Sanford v. Waugh & Co.</u>, 328 S.W.3d 836, 846-47 (Tenn. 2010) (adopting the Delaware Supreme Court's holding in <u>Gheewalla</u> and finding that although a creditor did not have a direct breach of fiduciary duty claim, he could have initiated a derivative claim on behalf of all of the insolvent corporation's creditors).[20]

---

[20] Defendant Alakai also discusses cases from North Carolina to support his argument that a derivative claim is required under the trust fund doctrine. However, the central case Alakai discusses does not in fact require a derivative claim under the trust fund doctrine. Rather, <u>Underwood v. Stafford</u> states that under the trust fund doctrine if "the cause of action were founded on injuries peculiar or personal to plaintiff himself, so that any recovery would not pass to the corporation and indirectly to other creditors, the cause of action could have been properly asserted by plaintiff." 270 N.C. 700, 703, 155 S.E.2d 211, 213 (N.C. 1967). However, where the alleged breach or injuries are based on duties owed to the corporation, and not to any particular creditor, the creditor must bring a derivative suit. <u>See</u> <u>id.</u>

The other cases Plaintiff cites follow this rule. <u>See</u> <u>Angell v. Kelly</u>, 336 F. Supp. 2d 540, 544-45 (M.D.N.C. 2004) (holding that when all creditors of an insolvent or bankrupt

(continued . . . )

Courts in other jurisdictions, however, have not

adopted this rule. See, e.g., PCS Nitrogen, Inc. v. Ross Dev.

Corp., 126 F. Supp. 3d 611, 629 (D.S.C. 2015), appealed

docketed, No. 16-1546 (4th Cir. May 12, 2016) ("The court

concludes that South Carolina law recognizes a direct cause of

action by a creditor against directors of an insolvent

corporation for breach of fiduciary duties owed that

creditor."); Koninklijke Philips Elecs. N V v. Nat'l Film Labs.

Inc., No. CV 12-4576 GAF (FFMx), 2014 WL 12581759, at *4 (C.D.

Cal. May 15, 2014) (stating that California case law "expressly

permits non-derivative actions by creditors under the trust fund

---

( . . . continued)
corporation share an injury based on a common act which was not
unique to plaintiff, only a receiver or trustee, and not the
creditors, has standing to assert the creditors' collective
claim against directors on behalf of the corporation); Goodwin
v. Whitener, 262 N.C. 582, 583-84, 138 S.E.2d 232, 233-34 (1964)
(holding that the insolvent corporation must be a party to the
case because the duties which have been breached because of the
directors' mismanagement of the corporation's affairs were
primarily to the corporation).

Under these cases, Mansha could bring a direct claim so
long as the cause of action was founded on injuries peculiar or
personal to it. Here, the FAC alleges a breach of fiduciary
duty based on particular duties Defendants owed to Mansha and
not HHC in general. Mansha has not alleged a common injury to
all creditors. The injury Mansha alleges is unique to Mansha
and is not primarily an injury to the corporation. The assets
that Mansha alleges Defendants dissipated were only those assets
that could have been used to pay Mansha and were not for the
direct benefit of the corporation or other creditors.
Therefore, contrary to Defendant Alakai's argument, the Court
finds that these cases support Plaintiff's position that it can
bring a direct claim here.

doctrine"); In re ms55, Inc., 420 B.R. 806, 819-20 (Bankr. D.
Colo. 2009), aff'd, No. 10-CV-00042-PAB, 2011 WL 1084967 (D.
Colo. Mar. 21, 2011) (contrasting Colorado law to Delaware's
holding in Gheewalla and stating, "Under Colorado law, by
contrast, directors of an insolvent corporation owe
a limited duty to creditors not to favor their own interests at
the expense of creditors" (emphasis in original)).

Under the trust fund doctrine in Hawaii, directors
hold a fiduciary relation to creditors.  See California Feed
Co., 10 Haw. at 212.  In In Re Ellis, in describing the trust
fund doctrine, the Supreme Court of Hawaii noted that "the
'trust fund theory' [] authorize[ed] the directors at the time
of dissolution to serve as trustees."  487 P.2d 286, 289 (Haw.
1971).  The court noted that "[i]n this capacity the former
directors are proper and necessary parties to legal proceedings
aimed at winding up the affairs of the dissolved corporation."
Id.  If the Court were to require a derivative suit in this
instance, it would be departing from Hawaii's rule that
directors of an insolvent corporation owe a fiduciary duty to
its creditors and are proper parties in legal proceedings
alleging a breach of that duty.  See California Feed Co., 10
Haw. at 212; Troy Laundry, 18 Haw. at 390.

There has been no indication that the Hawaii Supreme
Court would move away from this rule, which is central to the

43

trust fund doctrine.  Furthermore, as previously discussed,

Delaware's holding in Gheewalla is not consistently followed in

other jurisdictions.  The Court, therefore, finds that pursuant

to the trust fund doctrine, Mansha can allege a direct claim

against HHC's directors.

### iii. Whether the Breach of Fiduciary Duty Claim Against Defendant Alakai Must be Dismissed Because the FAC Does Not Adequately Allege a Breach

Defendant Alakai argues that the breach of fiduciary

duty allegation against him must be dismissed because it is, at

best, "an unadorned, the defendant-unlawfully-harmed-me-

accusation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

at 555).  The FAC alleges that Alakai was a member of HHC's

board of directors, that he was compensated, and that he was

aware of HHC's insolvency.  FAC ¶¶ 33, 36, 38.  Mansha then

alleges that Alakai breached his fiduciary duty to Mansha by

"despite multiple notifications from MANSHA . . . fail[ing] to

investigate and take reasonable action to effect proper

forwarding and payment of MANSHA's invoices by CMS, which

represented valuable assets to the Connector."  Id. ¶ 40.

Instead, "Defendants neglected and refused to forward MANSHA's

invoices for payment by CMS, thereby squandering, dissipating,

and unduly risking an asset that could have been used to pay

MANSHA, a creditor to the Connector."  Id. ¶ 41.

In his Reply,[21] Alakai argues that Mansha must allege that Alakai had personal "notice of Mansha's claims" and must have had the "authority . . . to investigate or forward Mansha's invoices" to state a plausible breach of fiduciary duty claim. Alakai Reply at 2. The Court agrees. Although Mansha alleges that Defendants received multiple notifications from Mansha (FAC ¶ 40), Mansha does not allege that Alakai, as a director of HHC, had responsibility for the overall administration of HHC and control over the proper forwarding and payment of Mansha's invoices by CMS.[22] For this reason, the Court finds that Mansha has failed to plausibly allege that Alakai breached his alleged fiduciary duty to Mansha and dismisses Count III as to Defendant Alakai on this additional basis.

### b. Breach of Fiduciary Duty Claim Against Defendants Matsuda and Kissel

Defendants Matsuda and Kissel argue that Mansha's FAC should be dismissed because they did not owe a fiduciary duty to

---

[21] The Ninth Circuit has held that a "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). However, a court has discretion to decide whether or not it will consider such arguments. Lane v. Dep't of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008) (citing Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1201-02 (9th Cir. 2001)).

[22] This is contrary to what the FAC alleges as to Defendants Matsuda and Kissel, who—as officers of HHC—had responsibility for its overall administration. FAC ¶¶ 23b, 24b.

The Court also notes that, as mentioned herein, CMS was to provide HHC with payments for it to forward to Mansha.

Mansha. Matsuda and Kissel first argue that the trust fund doctrine requires self-dealing. For the reasons previously discussed in Part III.a.iii.1, the Court holds that the conduct alleged in the FAC does not fall into the purview of the trust fund doctrine. Accordingly, the Court dismisses Count III as to Defendants Matsuda and Kissel.

Matsuda and Kissel also argue that Count III must be dismissed pursuant to the Court's February 16, 2017 Order, which held that they did not owe a fiduciary duty to Mansha under the trust fund doctrine because the complaint only referred to them as officers and not directors of HHC. See February 16, 2017 Order at 24-26. Similarly, in the FAC, Mansha has only referred to Matsuda as HHC's Interim Executive Director, FAC ¶¶ 23a, 28a-c, 34, and Kissel as HHC's Executive Director. FAC ¶¶ 24a, 29a-c, 35. Matsuda and Kissel therefore are not liable to Mansha under the trust fund doctrine because they were not directors of HHC, in addition to the other reasons discussed herein.

Mansha, citing to an excerpt of Troy Laundry, argues that Hawaii law is clear that the trust fund doctrine applies to both directors and officers.[23] However, Mansha fails to note

_____

[23] In making this argument, Mansha implies that the FAC only alleges that Matsuda and Kissel were officers. In addition, Mansha states in its opposition, "Defendants Tom Matsuda and Jeffrey Kissel officers of the Hawaii Health Connector . . ." Pl. Matsuda Opp. at 1.

(continued . . . )

that in the Troy Laundry excerpt it discusses, the Supreme Court

of the Territory of Hawaii was quoting a Seventh Circuit case,

Sutton Mfg. Co. v. Hutchinson, 63 F. 496 (7th Cir. 1894).[24]  As

previously discussed, the Court's February 16, 2017 Order

distinguished Sutton from the present case, on the basis that

the complaint did not allege that HHC determined to discontinue

the prosecution of business.  February 16, 2017 Order at 25 n.4.

Given this language in Sutton, the Court elaborates on

its previous order and finds that officers, who have managing

authority of the corporation, may have fiduciary duties under

the trust fund doctrine in certain circumstances, such as where

there has been a determination for the insolvent corporation to

no longer continue business.  However, none of these

circumstances have been alleged here.  For example, as

previously discussed, the FAC does not allege that HHC

"determined to discontinue the prosecution of business" at the

---

( . . . continued)
    The Court notes, however, that the FAC also contains
ambiguous language that Matsuda and Kissel were directors and/or
officers of HHC.  FAC ¶ 2.  To the extent Matsuda and Kissel can
be construed as directors of HHC, the Court still dismisses the
FAC as to these Defendants pursuant to the Court's February 16,
2017 Order, which required Mansha to allege that HHC determined
to discontinue the prosecution of business, and the fact that
Mansha has not alleged sufficient conduct to give rise to the
trust fund doctrine under Hawaii law.
    [24] The Court notes that Troy Laundry appears to be the only
Hawaii case that references the trust fund doctrine as applying
to both directors and officers.

time Defendants knew or should have known of HHC's insolvency. The FAC, therefore, fails to overcome the same defects that were fatal to this claim as originally pled. Accordingly, the Court dismisses Count III as to Defendants Matsuda and Kissel with prejudice.[25]

In sum, the Court dismisses all of Plaintiff's claims in the FAC. Because further amendment is futile, this dismissal is with prejudice, without leave to amend.[26]

---

[25] The Court notes that one allegation in Mansha's complaint seems to allege that Defendants intentionally withheld Mansha's invoices for payment by CMS. See FAC ¶ 40 ("Defendants neglected and refused to forward MANSHA's invoices for payment by CMS . . ." (emphasis added)). The Court, however, does not interpret the FAC as alleging an intentional claim because the FAC consistently alleges negligence except for this allegation, and does not allege sufficient facts to support a claim based on intentional wrongdoing.

[26] The Court notes that granting Plaintiff leave for further amendment would be futile with respect to the negligent misrepresentation and negligence claims because of the law of the case, which held that none of the conduct alleged here gives rise to a tort duty, and the economic loss rule.

In regard to the breach of fiduciary duty claim, granting leave for further amendment would be futile as to all Defendants because none of the conduct Plaintiff alleges gives rise to the trust fund doctrine and therefore Plaintiff cannot state a plausible claim that Defendants owed Mansha a fiduciary duty.

However, the Court notes that it also dismisses the FAC on the following grounds where further amendment might not be futile: (1) Plaintiff has not alleged that HHC had determined to discontinue business; and (2) Plaintiff has not adequately alleged that Alakai breached any alleged fiduciary duties because Plaintiff has not pled that Alakai had authority over HHC's overall administration and the proper forwarding and payment of Mansha's invoices by CMS.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant Tom Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017 (ECF No. 37), Defendant Cliff Alakai's Pre-Answer Motion to Dismiss First Amended Complaint Filed on March 17, 2017 (ECF No. 40), and Defendant Jeffrey Kissel's Substantive Joinder to Defendant Tom Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017 and to Defendant Cliff Alakai's Pre-Answer Motion to Dismiss the First Amended Complaint Filed on March 17, 2017 (ECF No. 41). The Court dismisses all counts in the First Amended Complaint WITH PREJUDICE, and Plaintiff's First Amended Complaint is hereby DISMISSED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 23, 2017.

Alan C. Kay
Sr. United States District Judge

Mansha Consulting LLC vs. Cliff Alakai, et al., Civ. No. 16-00582 ACK-RLP, Order Granting Defendant Tom Matsuda's Motion to Dismiss First Amended Complaint Filed March 17, 2017, Defendant Cliff Alakai's Pre-Answer Motion to Dismiss First Amended Complaint Filed on March 17, 2017, and Jeffrey Kissel's Substantive Joinder to Defendant Matsuda's and Defendant Alakai's Motions to Dismiss First Amended Complaint Filed on March 17, 2017